# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ARTURO REYES, DANIEL MERINO, JOSE
ARENAS, and DIANA CAMMARATA, on behalf of
themselves and all others similarly situated,

Plaintiffs,

-against-

ALTAMAREA GROUP, LLC, ALTO 53, LLC d/b/a
ALTO and CHRIS CANNON,

Defendants.

No. 10-CV-6451 (RLE)



[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION
OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION
SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, APPROVAL OF
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CLASS
REPRESENTATIVE SERVICE AWARDS

Plaintiffs are former captains, assistants, runners, and bussers who worked at Alto in New York City. Alto, which closed on March 4, 2011, was owned and/or operated by Defendant Chris Cannon ("Cannon") and the corporate entities Altamarea Group, LLC ("Altamarea") and Alto 53, LLC d/b/a Alto.

On August 30, 2010, Plaintiffs commenced this action as a putative class action under Federal Rule of Civil Procedure 23 and as a collective action under 29 U.S.C. § 216(b), bringing claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Declaration of Rachel Bien in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Bien Decl.") ¶ 4. On October 25, 2010, Plaintiffs amended their complaint, alleging additional facts supporting liability against Defendants Altamarea and Cannon. *Id.*

Plaintiffs filed a motion for conditional certification and court-authorized notice pursuant to 29 U.S.C. § 216(b) on November 15, 2010. After Plaintiffs filed their motion, Defendants agreed not to oppose conditional certification and the parties negotiated the terms of a proposed notice, which they submitted to the Court for its approval. *Id.* ¶ 5. On January 13, 2011, the Court-authorized notice was sent to approximately 52 potential collective members, 26 of whom joined the lawsuit by submitting consent to join forms. *Id.* ¶ 6.

On December 15, 2010, Defendants moved to dismiss the complaint, arguing that Altamarea was not an employer under the FLSA or NYLL and that the claims failed to state a cause of action. *Id.* ¶ 7. On January 18, 2011, the Court denied Defendants' motion in its entirety, holding that Plaintiffs had sufficiently alleged that an employer-employee relationship existed between Altamarea and Plaintiffs and had sufficiently pled their claims. *Id.*

The parties reached this $300,000 settlement under the supervision of an experienced employment law mediator, Dina Jansenson, Esq., of JAMS. *Id.* ¶ 11. Thereafter, the parties executed a formal written settlement agreement ("Settlement Agreement"). *Id.* ¶ 12.

On June 3, 2011, the Court entered an Order preliminarily approving the settlement, conditionally certifying the settlement class, appointing Outten & Golden LLP as Class Counsel, and authorizing the dissemination of the proposed settlement notice ("Notice"). Docket No. 72. On June 13, 2011, Garden City Group, Inc., a claims administrator, sent the Notice to all class members informing them of their right to opt out of or object to the settlement and of Class Counsel's intention to seek up to 33% of the settlement fund for attorneys' fees, and up to $15,000 for their out-of-pocket expenses.

On August 4, 2011, Plaintiffs filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion

2

for Final Approval"). That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Class Representative Service Awards ("Motion for Service Awards"). Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on August 16, 2011. No Class Member objected to the settlement or requested exclusion.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards, and the supporting declarations, the oral argument presented at the August 16, 2011 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the August 16, 2011 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1. The Court certifies the following class under Federal Rule of Civil Procedure 23(e), for settlement purposes:

> All captains, assistants, runners, and bussers who worked at Alto at any time from the date Alto opened on or about May 1, 2005 through March 4, 2011 and whose names are listed on the class list attached as Exhibit A to the Settlement Agreement.

2. Plaintiffs meet all of the requirements for class certification under Fed. R. Civ. P. 23(a) and (b)(3).

3. Plaintiffs satisfy Fed. R. Civ. P. 23(a)(1) because there are approximately 115 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde*

3

*Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members").

4. The proposed class also satisfies Fed. R. Civ. P. 23(a)(2), the commonality requirement. All class members raise common issues: whether Defendants misappropriated tips by unlawfully distributing a portion to non-tip eligible managers, whether Defendants failed to pay spread-of-hours pay, and whether Defendants failed to pay statutory uniform maintenance payments and unlawfully charged workers for required uniforms. *See Campos v. Goode*, No. 10 Civ. 0224, 2010 WL 5508100, at *1-2 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food LLC*, No. 09 Civ. 00440, 2010 WL 2399345, at *1 (S.D.N.Y. Apr. 19, 2010); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010).

5. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the class members' claims. *See deMunecas*, 2010 WL 2399345, at *2; *Prasker*, 2010 WL 476009, at *2.

6. Plaintiffs satisfy Fed. R. Civ. P. 23(a)(4) because there is no evidence that the Plaintiffs' and the class members' interests are at odds. *See deMunecas*, 2010 WL 2399345, at *2; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010).

7. In addition, Plaintiffs' counsel, Outten & Golden LLP, "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law." *Westerfield v. Wash. Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 00287, 2009 WL 6490084, at *3 (E.D.N.Y. June 26, 2009).

8. Plaintiffs also satisfy Rule 23(b)(3). Common factual allegations – that

4

Defendants misappropriated tips, failed to make statutory uniform payments or reimburse uniform costs, and failed to pay spread-of hours pay – and a common legal theory – that these policies violated the NYLL – predominate over any factual or legal variations among class members. *See Campos*, 2010 WL 5508100, at *2; *deMunecas*, 2010 WL 2399345, at *1.

9. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Campos*, 2010 WL 5508100, at *2; *deMunecas*, 2010 WL 2399345, at *2; *McMahon*, 2010 WL 2399328, at *3. The Plaintiffs and class members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will not only achieve economies of scale for class members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior when individual claims would burden judiciary, be inefficient for plaintiffs, and yield inconsistent results); *see also deMunecas*, 2010 WL 2399345, at *2 (class adjudication would conserve judicial resources and increase efficiency for class members in restaurant case on behalf of tipped minimum wage workers).

## APPROVAL OF THE SETTLEMENT AGREEMENT

10. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

11. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To

determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

12. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

13. A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

***Procedural Fairness***

14. The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *deMunecas*, 2010 WL 3322580, at *4; *Prasker*, 2010 WL 476009, at *4. The settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after arm's-length negotiations between the parties.

6

15. Class counsel reviewed Defendants' payroll data, tip sheets, employee handbooks, documents reflecting the duties of the managers who received tips, and copies of the minimum wage posters that Defendants displayed at the restaurant. Bien Decl. ¶ 8. Class counsel also interviewed current and former employees of Defendants to obtain factual information as part of their investigation of the claims. *Id.* ¶ 9.

16. The parties attended three settlement conferences before the Court and enlisted the services of experienced employment mediator. Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirement of due process. These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *deMunecas*, 2010 WL 3322580, at *1; *Prasker*, 2010 WL 476009, at *4.

### *Substantive Fairness*

17. The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

18. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

19. Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

20. The class's reaction to the settlement was positive. The Notice included an explanation of the allocation formula and an estimate of each class member's award. The Notice also informed class members of their right to object to or exclude themselves from the Settlement and explained how to do so. No class member objected to or opted out of the settlement. This favorable response demonstrates that the class approves of the settlement and supports final approval. *See deMunecas*, 2010 WL 3322580, at *5; *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

21. The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). Here, through an efficient, informal exchange of information, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims. The parties' participation in three settlement conferences and a day-long mediation allowed them to further explore the claims and defenses. The third *Grinnell* factor weighs heavily in favor of final approval.

22. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6

(S.D.N.Y. June 25, 2007). Here, the fact-intensive nature of Plaintiffs' misappropriated tip and tip credit claims presents risk, as does the question of Altamarea's liability for any violations proven. The proposed settlement eliminates this uncertainty. This factor therefore weighs in favor of final approval.

23. The risk of obtaining class certification and maintaining it through trial is also present. A contested class certification motion would likely require extensive discovery and briefing. If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The fifth *Grinnell* factor weighs in favor of final approval.

24. Defendants Alto 53 LLC and Cannon likely could not have withstood a greater judgment due to the financial difficulties they faced, including the closure of Alto and Cannon's other restaurant, Convivio, on March 4, 2011. Even if they could, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)). Here, the Settlement Agreement eliminates the risk of collection. Defendants have already paid half of the settlement amount into escrow. The settlement requires them to pay the remainder into escrow by September 10, 2011 or the date of this order, whichever is later. Accordingly, this factor also favors final approval.

25. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re*

9

*Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The seventh *Grinnell* factor weighs in favor of final approval.

**APPROVAL OF THE FLSA SETTLEMENT**

26.     The Court hereby approves the FLSA settlement.

27.     Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see McMahon*, 2010 WL 2399328, at *6. Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23.

28.     Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *deMunecas*, 2010 WL 3322580, at *7.

29.     In this case, the settlement was the result of litigation and arm's-length negotiation. Bien Decl. ¶ 14. During the litigation and at the mediation, Plaintiffs and Defendants were represented by counsel. Accordingly, the Settlement Agreement resolves a

10

clear and actual dispute under circumstances supporting a finding that is fair and reasonable.

## DISSEMINATION OF NOTICE

30. Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each class member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located). The Court finds that the Notice fairly and adequately advised class members of the terms of the settlement, as well as the right of members of the class to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on August 16, 2011. Class members were provided with the best notice practicable under the circumstances.

31. The Court further finds that the Notice and its distribution comported with all constitutional requirements, including those of due process.

32. The Court confirms Garden City Group, Inc. as the claims administrator.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS

33. One June 3, 2011, the Court appointed Outten & Golden LLP as Class Counsel because they met all of the requirements of Fed. R. Civ. P. 23(g). *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

34. Class Counsel, Outten & Golden LLP, are experienced employment lawyers with good reputations among the employment law bar. The have substantial experience prosecuting

11

large-scale wage and hour class and collective actions. *See deMunecas*, 2010 WL 3322580, at *7 ("Class Counsel, Outten & Golden LLP, are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions."); *McMahon*, 2010 WL 2399328, at *6 (O&G are "experienced employment lawyers with good reputations among the employment law bar"). The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests. Class Counsel have committed substantial resources to prosecuting this case.

35. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $99,000, which is 33% of the settlement fund.

36. The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121; *deMunecas*, 2010 WL 3322580, at *8.

37. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, *McDaniel*, 595 F.3d at 417, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *see deMunecas*, 2010 WL 3322580, at *7. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and the NYLL are remedial statutes, the

purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011); *McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3.

38. In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *deMunecas*, 2010 WL 3322580, at *8; *McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix*, 2011 WL 754862, at *6; *McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.")

39. Common fund recoveries are contingent on a successful litigation outcome. Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *deMunecas*, 2010 WL 3322580, at *8 (internal quotation marks omitted). Many individual litigants, including the class members here, "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Id.*

40. Class counsel's request for 33% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, 05 Civ. 3452

13

(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

41. Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* does not address a common fund fee petition, it supports class counsel's request for 33% of the fund because "reasonable, paying client[s]," 522 F.3d 182, 191 (2d Cir. 2008), typically pay one-third of their recoveries under private retainer agreements. *deMunecas*, 2010 WL 3322580, at *9. While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method. *Willix*, 2011 WL 754862, at *7.

42. All of the factors in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) weigh in favor of the requested fee award.

43. Applying the lodestar method as a "cross check," *see id.* at 50, the Court finds that the fee class counsel seek is reasonable. Courts regularly award lodestar multipliers from 2 to 6 times lodestar. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *27 (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market- Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig.*, MDL No. 818 (MBM), No. 88 Civ. 7905 (MBM), 1992 WL 210138, at *6-8 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Rabin v. Concord Assets Group, Inc.*, No. 89 Civ. 6130 (LBS), 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4). Here, Class Counsel are not seeking a lodestar multiplier, as the hours they expended on the litigation result in a lodestar that is higher than the $99,000 they seek.

44. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. *See deMunecas*, 2010 WL 3322580, at *10.

45. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $15,000. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's unreimbursed expenses, including mediation fees, the cost of administering notice to collective members, telephone charges, postage, transportation, working meal costs, photocopies, and electronic research, are reasonable and were incidental and necessary to the representation of the class.

46. The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

47. The Court finds reasonable service awards of $15,000 each for class representatives Arturo Reyes, Daniel Merino, and Jose Arenas, and $5,000 for class representative Diana Cammarata. These amounts shall be paid from the settlement fund.

48. Such service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *deMunecas*, 2010 WL 3322580, at *9.

49. The "Effective Date" of the settlement shall be 31 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved.

50. Within 5 days of the Effective Date, the claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

    a. Paying Class Counsel thirty-three percent (33%) of the fund ($99,000);

    b. Reimbursing Class Counsel for $15,000 in litigation costs and expenses;

    c. Paying service awards of $15,000 each to Plaintiffs Arturo Reyes, Daniel Merino, and Jose Arenas, and $5,000 to Plaintiff Diana Cammarata;

    d. Paying the remainder of the fund to class members in accordance with the allocation plan described in the Settlement Agreement.

51. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 16th day of August, 2011.

_____
Honorable Ronald L. Ellis
United States Magistrate Judge